Mr. Justice Wylie
delivered the opinion of the court:
This is an action by the holder of a check against the drawer, Wilson E. Brown, and the indorser, Jerome Browne, jr., united as defendants, as permitted by our laws. The check is dated 24th July, 1871, is drawn for $100, and payable to Jerome Browne or bearer. It was passed to the plaintiff in course of business, for value, and without notice that, as between the drawer and payee, it was for the accommodation of the latter. It was held by the plaintiff, without presentation at the bank, till the 4th of January, 1872 — a period of five months and twenty days. It was then presented for payment, but the drawer had no funds in the bank to meet it, and payment was refused. The payee, Jerome Browne, makes *354 no defense; but the drawer, Wilson E. Brown, claims that the check in question was drawn for accommodation of the payee, and that he was discharged from his original liability in consequence of the holder’s delay in presenting the note for payment. At the trial in the circuit court the following evidence was offered by the defense, and allowed to go to the jury:
3. Evidence that the check was not presented for payment till the 4th of January, 1872.
2. That the check was an accommodation-check, loaned by the drawer to Jerome Browne, jr., for ten days.
3. Evidence that for three or four months after the date of the check Jerome Browne, jr., was in solvent circumstances, and that the money could have been collected from him'; but that subsequently to November, 1871, he was insolvent and continued so to the date of the trial.
To the admission of this evidence plaintiff objected, and excepted to the rulings of the court allowing it to be given to the jury.
No evidence was given or offered to show that the holder of the check was other than a bona-fide holder for value, and without notice of its accommodation character at the time it was assigned to him by Jerome Browne, jr. He must therefore be regarded as being the holder of a check purchased in the course of business, bona fide, for value, and without notice of any defense against it on the part of its drawer. Its accommodation character as between the drawer and the payee is, therefore, not an element belonging to the case which we are to consider. As against a holder of this character, the maker of accommodation-paper occupies no other ground than the maker of regular commercial paper.
The evidence admitted on this point, therefore, we think ought to have been excluded.
For the same reason we think the evidence tending to show that the indorser was solvent for four months after the date of the check, and after that up to the period when it was presented for payment, and even to the date of the trial, was of no consequence. The holder was not bound to know, nor was he informed, that the check was other than it appeared to be on its face; and there he saw that Wilson E. Brown was the drawer of the check, and *355 the principal in the transaction, and Jerome but an indorser and only contingently liable. Had he released the latter in express terms from all liability to him as such indorser, that would not have impaired his rights as against the drawer of the check.
But it is claimed for the defense that the plaintiff has lost his remedy in consequence of the long delay in presenting the check for payment.
There are three respects at least in which a check differs from a bill of exchange: first, it is always drawn upon a bank or banker, and is payable immediately on presentment, without the days of grace ¡ second, it requires no acceptance apart from the act of payment$ and third, it is always supposed to be drawn on a private deposit of funds, and amounts to an absolute appropriation of so much thereof to the holder of the check, to remain on deposit so appropriated until called for, and cannot be afterwards withdrawn. Ex parte Brown, 2; Story C. C. R., 511 to 518; 3 Kent’s Com., 104, note; Conroy vs. Warren, 3 John’s Cas., 259, &c.; Chitty on Bills, 583.
In Hoyt vs. Seeley, 18 Conn., 353, the holder of the check did not present it to the bank for payment for more than two years, but because the bank was all the time solvent, and the drawer of the check had sustained no loss in consequence of the delay, but had himself withdrawn the funds which otherwise would have been paid upon the check, it was held he was not exonerated from liability.
It is quite true that the rule requiring the prompt presentation of bills of exchange is also the rule as to the presentation of checks upon bankers. But it means no more than this: that if the holder of a check retains it in his possession beyond the time prescribed by the rule, he discharges the indorsers, if there be any, or takes upon himself the risk of the continued solvency of the bank. But the discharge of he indorsers is not a discharge of the drawer of a check, any more than the neglect of the holder of a promissory note to make demand of payment on the last day of grace, and give notice of non-payment to the indorsers in that case, would discharge the maker of the note from liability. He remains liable, although all the other parties may be discharged, *356 because his is the primary and absolute liability, while theirs is but contingent, conditional, and secondary. So when the rule of diligence requires a check, bill, or note to be presented within any certain prescribed period, it is with a view to the liability of the secondary parties alone.
But in addition to what has been said on these questions, the record shows us that the check in the present case was not made payable to the order of Jerome Browne, jr., but to him or bearer. It would have been quite as negotiable without the indorsement of Jerome Browne, jr., as with it. (See Chitty on Bills, 511.) And so the plaintiff seems to have regarded it: for after payment was refused, he took no pains to give notice thereof to the indorser. The holder was at liberty to treat the check as though it needed no indorsement, and contained none. The question is one, therefore, simply between drawer and bearer, and the rule in such case is thus stated by Kent: “As between the drawer of a check and the indorser,it ought to be presented for acceptance.(payment?) with due diligence; but as between the holder and the drawer, a demand at any time before suit brought will be sufficient, unless it appear that the drawer has failed, or the drawer has in some other manner sustained injury by the delay.” 3 Com., 88.
But even if the accommodation character of the paper had been known to the plaintiff, we are not prepared to say that such a circumstance would have affected the result in this case.
In Smith vs. Knox, 3 Esp. R., 46, Lord Eldon said, “ When a bill is given merely for the accommodation of the drawer or payee, and that is sent into the world, it is no answer to an action on that bill that the defendant accepted it for the accommodation of the drawer, and that that fact was known to the holder. In such case, if the holder gave a bona-fide consideration for it, he is entitled to recover the amount, though he had full knowledge of the transaction.”
In Chitty on Bills, 305, it is said that the very object of an accommodation acceptance is to enable the party accommodated to obtain money or credit from a third person, and therefore the want of consideration furnishes no defense to one who *357 lias advanced money on the credit of the acceptor, though he may have been defrauded by the drawer.
In the case under consideration, the drawer of the check had a deposit to his credit at the bank sufficient to pay the check at, and for some time subsequently to, its date. By the check he had appropriated its amount to this holder, and had no right to withdraw it afterward. The delay in presenting the check was at the risk of the holder. If the bank had failed the loss would have been his. But the money so set over was afterward withdrawn by the drawer of the check himself, and thus, afcer having taken the money, he is now attempting to throw the loss on the party whose money he unjustly appropriated.
Judgment reversed and new trial awarded.